UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Justin Huffman, Gregor Kramer, Archie Yumping, and Christopher Shaw, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br>v.<br><br>Jam Productions, Ltd., Event Productions, Inc., Standing Room Only Inc., and Victoria Operating Company, LLC,<br><br>        Defendants. | Case No.: 16-cv-8616 |

**COMPLAINT**

Plaintiffs Justin Huffman, Gregor Kramer, Archie Yumping, and Christopher Shaw, on behalf of themselves and all others similarly situated, allege as follows:

**JURISDICTION AND VENUE**

1. This action is brought under the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. §201, *et seq.,* and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105 *et seq.*, for Defendants' failure to pay Plaintiffs and other similarly-situated persons all earned overtime wages.

2. Plaintiffs bring their FLSA claims as a collective action under 29 U.S.C. § 216(b), and their IMWL claims as a class action under Fed. R. Civ. P. 23.

3. This Court has subject matter jurisdiction pursuant to Section 16(b) of the FLSA, 29 U.S.C. §216(b), and 28 U.S.C. §§ 1331 and 1337.

4. Additionally, this Court has supplemental jurisdiction over Plaintiffs' IMWL claims under 28 U.S.C. § 1367 because they derive from a common nucleus of operative fact.

**PARTIES**

5. Plaintiffs Gregor Kramer, Archie Yumping, and Christopher Shaw are adult individuals residing in this judicial district who worked for Defendants as hourly, non-exempt stagehands during all or part of the prior three years.

6. Plaintiff Justin Huffman is an adult individual residing in Kenosha, Wisconsin who worked for Defendants as an hourly, non-exempt stagehand during the prior three years.

7. Plaintiffs Kramer, Yumping, and Huffman are and have been throughout the last three years "employees" of Defendants within the meaning of 29 U.S.C. § 203(e) and 820 ILCS 105/3(d).

8. Plaintiff Shaw was, throughout the last three years until about September 20, 2015, an "employee" of Defendants within the meaning of 29 U.S.C. § 203(e) and 820 ILCS 105/3(d).

9. Plaintiffs consent to sue. See Plaintiffs' Consent to Sue, attached as Exhibit A.

10. Defendants Jam Productions, Ltd. ("Jam"), Event Productions, Inc. ("EP"), and Standing Room Only Inc. ("SRO") are each Illinois corporations headquartered and operating within this judicial district.

11. Defendant Victoria Operating Company, LLC ("Victoria") (collectively, with Jam, EP, and SRO, the "Employers") is an Illinois Limited Liability Company headquartered and operating within this judicial district.

12. Jam is a producer of concerts and special events that bills itself as "the largest independent producer of live entertainment in the United States." Jam promotes concerts in the greater Chicago area, the Twin Cities in Minnesota, and around the rest of the country.

13. Jam is the exclusive producer of concerts and special events at the following three venues in the City of Chicago, Illinois: the Riviera Theatre, located at 4746 N. Racine Avenue, Park West, located at 322 W. Armitage Avenue, and the Vic Theatre, located at 3145 N. Sheffield Avenue.

14. Jam also, throughout the last three years, has produced concerts and events at the Aragon Ballroom, located at 1106 W. Lawrence Avenue in Chicago, Illinois. The Aragon Ballroom, the Riviera Theatre, Park West, and the Vic Theatre are referred to collectively herein as the "Venues."

15. Jam's production of concerts and events at the Venues typically requires the employment of a crew of stagehands. Stagehands for Jam concerts and events at the Riviera, Aragon, and special events elsewhere, such as at temporary or outdoor venues ("Special Events"), are nominally employed primarily by EP; stagehands for concerts and events at Park West are nominally employed primarily by SRO; and stagehands for concerts and events at the Vic are nominally employed primarily by Victoria.

16. Upon information and belief, throughout the last three years the Employers have shared common ownership and are under common control.

17. Throughout the last three years the Employers have been under common management, have shared office staff, and have all been headquartered in the same offices at 207 West Goethe Street in Chicago, Illinois.

18. Upon information and belief, throughout the last three years the wages and all related employee compensation policies of the Employers have been centrally and collectively dictated, controlled, and ratified.

19. Throughout the last three years, the Employers have not been completely disassociated with respect to the employment of stagehands, including Plaintiffs.

20. Throughout the last three years, the Employers have shared control of Plaintiffs' employment.

21. Throughout the prior last three years, the Employers were employers within the meaning of 29 U.S.C. § 203(d) and 820 ILCS 105/3(c).

22. Throughout the last three years, the Employers have been joint employers with respect to Plaintiffs within the meaning of the FLSA, IMWL, and their implementing regulations.

## FACTUAL BACKGROUND

23. For productions at the Venues and most Special Events, Jam assigns a crew of stagehands to "load in" prior to the show (*i.e.* to unload and install the performers' equipment and stage elements and set up any house equipment for the performance) and to "load out" after the show, and a smaller crew remains during the performance to, among other things, operate lights, audio, and/or video.

24. Plaintiff Shaw was, until his termination in September 2015, the person chiefly responsible on behalf of Jam for scheduling stagehands to work at the Riviera, Aragon, and Special Events, and also occasionally assigned some stagehands to work shows at Park West and the Vic Theatre. Shaw scheduled stagehands for all of the Venues and Special

4

Events without regard to which of the Employers was paying the stagehands for a particular concert or event.

25. Shaw typically assigned stagehands, including Huffman, Kramer, Yumping, and himself, to work opportunities according to their overall seniority with the Employers, regardless of which of the Employers was paying them for a particular concert or event. Many of the same employees, including Shaw, Huffman, Kramer, and Yumping, worked as stagehands at more than one of the Venues and/or at Special Events for more than one of the Employers, and there was frequent interchange of employees among the Employers.

26. For many of the concerts or event for which the Employers employed stagehands (including Plaintiffs), Shaw would keep a record of the stagehands who worked the event, their hourly wages, and the number of hours they worked. Shaw would then submit these records to Jam's offices at 207 W. Goethe Street. Shaw maintained in his own personal files a copy of all such payroll records that he submitted to Jam for work performed by stagehands for the Employers.

27. Throughout the last three years, each of the Employers has used a weekly pay period; class member employees, including Plaintiffs, received weekly paychecks from EP, SRO, and/or Victoria depending upon the nature of the event and where the employees had worked.

28. For those shows and events for which an employee received paychecks from EP, the Employers tracked separately for each pay period hours the employee worked at one of the Venues and hours that same employee worked at a Special Event.

29. It was and is the Employers' consistent policy and practice that, for purposes of eligibility for overtime, the hours worked at the Venues by class member employees who were

5

nominally employed by EP, including Plaintiffs, are counted separately from hours those same employees worked at Special Events. That is, such employees receive overtime pay from EP *only* when they work more than forty hours in a pay period at the Venues and/or more than forty hours in a pay period at Special Events.

30. Under this policy and practice class member employees, including Plaintiffs, who in one week work more than forty hours total for EP, but work fewer than forty hours at the Venues and fewer than forty hours at Special Events, are not paid overtime. For example, under the Employers' policy and practice an employee who in the same weekly pay period worked 32 hours for EP at concerts at the Riviera and 17 hours for EP at a Special Event, would receive two separate paychecks from EP for 32 and 17 hours, respectively, all at straight time. As another example, under this policy and practice an employee who in the same weekly pay period worked 44 hours for EP at concerts at the Riviera and 8 hours for EP at a Special Event, would receive two separate paychecks from EP: one that included 40 hours of straight time and 4 hours of overtime for the work at the Riviera, and a second check for 8 hours at straight time for the Special Event.

31. It also was and is the Employers' consistent policy and practice that, for purposes of eligibility for overtime, the hours worked by class member employees, including Plaintiffs, for each of the Employers are counted separately. That is, such employees receive overtime pay *only* when they work more than forty hours in a pay period for any one of the Employers.

32. Under this policy and practice class member employees, including Plaintiffs, who in one weekly pay period work fewer than forty hours for any one of the Employers but more than forty hours for all of the Employers combined are not paid overtime. For exam-

6

ple, under the Employers' policy and practice an employee who in the same weekly pay period was assigned to work, and actually worked, 25 hours for EP at the Riviera, 25 hours for SRO at Park West, and 25 hours for Victoria at the Vic, would receive three separate paychecks, one from each Employer, totaling 75 hours of straight time.

33. Because the Employers constitute a joint employer, they were required to, but did not, aggregate all hours worked by class members, including Plaintiffs, for purposes of compliance with the FLSA's overtime provisions.

34. The policies and practices described above were implemented by the Employers more than three years ago, but prior to the implementation of these policies and practices, the Employers did aggregate all hours worked by stagehand employees at all the Venues and Special Events for the different Employers for overtime purposes. On information and belief, the Employers ceased this practice more than three years ago because they found it burdensome when booking concerts and events to try to budget for potential overtime costs.

35. As a result of the Employers' policies and practices described above, Plaintiffs and class members repeatedly worked in excess of forty hours per week and were denied statutory overtime wages.

**CLASS AND COLLECTIVE ACTION ALLEGATIONS**

36. Plaintiffs and similarly-situated persons are current and former employees of Defendants employed as stagehands (including but not limited to house crew, per diem stagehands, crew chiefs, and stage production managers) who were not paid overtime for all hours worked each week in excess of forty hours.

37. Plaintiffs and other class members are similarly situated to one another because, among other things, they are all subject to the Employers' common policies and practices of

7

failing to aggregate for overtime purposes all hours worked at Venues and Special Events for EP, and failing to aggregate for overtime purposes all hours worked for each of the Employers.

38. The Employers know and/or have reason to believe that Plaintiffs and class members have worked more than forty hours a week at EP and/or for the Employers collectively, yet have consciously chosen not to pay them overtime, electing to accept the benefit of Plaintiffs' and class members' uncompensated overtime work in order to keep the costs of producing events and shows in line with budgetary projections that deliberately omit any consideration of overtime costs.

39. With respect to Plaintiffs' FLSA collective action claims, Plaintiffs seek to issue Notice of this action to a class (the "Collective Action Class") defined as:

> All persons employed by Defendants as stagehands during the period September 2013 to the conclusion of this action (a) whose hours worked in a weekly pay period for Event Productions, Inc. for special events and music venues added together total more than forty, but who did not receive overtime pay for all hours over forty, and/or (b) whose hours worked in a weekly pay period for all four Defendants added together total more than forty, but who did not receive overtime pay for all hours over forty.

40. With respect to Plaintiffs' IMWL claim, Plaintiffs seek to represent a class (the "IMWL Class") that is comprised of and defined as:

> All persons employed by Defendants as stagehands during the period September 2013 to the conclusion of this action (a) whose hours worked in a weekly pay period for Event Productions, Inc. for special events and music venues added together total more than forty, but who did not receive overtime pay for all hours over forty, and/or (b) whose hours worked in a weekly pay period for all four Defendants added together total more than forty, but who did not receive overtime pay for all hours over forty.

41. Plaintiffs' IMWL claims are being brought as a class action under Fed. R. Civ. P. 23 because the IMWL Class is so numerous that joinder of all class members is impracticable.

8

42. The Representative Plaintiffs and the members of the IMWL Class have been similarly affected by Defendants' practice of not properly paying overtime compensation for all hours worked over forty in a week.

43. The Representative Plaintiffs, the members of the IMWL Class, and Defendants have a commonality of interest in the subject matter and the remedy sought.

44. There are questions of law and fact common to the Class which predominate over any questions affecting individual members only. These factual and legal questions include:

    a. Whether Plaintiffs and class members periodically worked over forty hours in a week for EP without being paid overtime wages;

    b. Whether Plaintiffs and class members periodically worked over forty hours in a week total for all Defendants without being paid overtime wages;

    c. Whether Defendants constitute a joint employer within the meaning of the FLSA and, therefore, the IMWL;

    d. The correct statute of limitations for Plaintiffs and class members' claims;

    e. The correct method of calculating back overtime pay;

    f. Whether Plaintiffs and class members are entitled to compensatory damages and, if so, the means of measuring such damages;

    g. Whether Defendants are liable for pre-judgment interest; and

    h. Whether Defendants are liable for attorneys' fees and costs.

45. Defendants have acted and refused to act on grounds generally applicable to the Class.

46. The claims of the representative Plaintiffs are typical of the claims of the Class in that Plaintiffs were denied overtime wages as a result of Defendants' uniform policy of not compensating its non-exempt employees for all hours worked. This is the predominant issue which pertains to the claims of each and every class member.

47. The class action/collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy. The damages suffered by individual members of the Class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Class to individually seek redress for the wrongs done to them.

48. Furthermore, even if any member of the Class could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system. The instant methodology, when compared to voluminous individual actions, has fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court. Concentrating this litigation in one forum will promote judicial economy and parity among the claims of individual members of the Class and provide for judicial consistency.

49. Plaintiffs will fairly and adequately protect the interests of the Class, as their interests are in complete alignment with those of the entire class, *i.e.*, to prove and then eradicate Defendants' illegal employment practices of not paying overtime wages to their non-exempt employees.

50. Counsel for Plaintiffs will adequately protect the interests of the Class. Jacobs, Burns, Orlove & Hernandez is experienced with employment litigation.

51. Plaintiffs and the Class they seek to represent have suffered and will continue to suffer irreparable damage from the illegal policy, practice and custom regarding Defendants' pay practices.

52. Defendants' actions in denying overtime wages to Plaintiffs and the Class were intentional and constitute a willful violation of both the FLSA and the IMWL.

## COUNT I — FLSA

53. The allegations set forth in the preceding paragraphs are incorporated herein.

54. At all relevant times, Defendants have been employers engaged in interstate commerce within the meaning of 29 U.S.C. §§206(a) and 207(a).

55. At all relevant times, Defendants employed Plaintiffs and each member of the Collective Action Class consistent with the terms of the FLSA.

56. As a consequence of Defendants' employment practices, whereby hourly, nonexempt employees were subject to Defendants' policies of counting hours worked for each Defendant Employer in a given workweek separately for overtime purposes and, at EP, counting hours worked at Special Events separately for overtime purposes from hours worked at productions and events at Venues, Plaintiffs and class members were not paid for all hours worked in excess of forty hours in a workweek in violation of the overtime provisions of the FLSA. 29 U.S.C. §207(a).

57. Plaintiffs and class members were employees of Defendants within the meaning of the FLSA and were entitled to the benefits of the FLSA's overtime wage requirements.

58. Defendants' policy of denying Plaintiffs and class members overtime wages represents and results in a violation of the FLSA's maximum hour requirements.

59. Defendants have failed to pay appropriate overtime wages under the FLSA.

60. Defendants' failure to pay Plaintiffs and class members one and one-half times their regular rate for all time worked over forty hours in a workweek was willful in that, *inter alia*, Defendants knew that the FLSA required them to pay time and one-half for all hours worked over forty in a workweek but deliberately abandoned that practice for budgetary reasons.

WHEREFORE, Plaintiffs respectfully request:

A. All applicable statutory damages;

B. A declaration that Defendants have violated the FLSA;

C. An order designating this action as a collective action and directing the issuance of notice pursuant to 29 U.S.C. §216(b);

D. An order appointing Plaintiffs and their counsel to represent those individuals opting into the collective action;

E. An order awarding counsel for Plaintiffs reasonable attorneys' fees and costs; and

F. Any further relief which the Court deems appropriate under the circumstances.

## COUNT II — IMWL

61. The allegations set forth in the preceding paragraphs are incorporated herein.

62. The IMWL provides in relevant part:

[N]o employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1½ times the regular rate at which he is employed.

820 ILCS 105/4a(l).

63. As a consequence of Defendants' employment practices, whereby hourly, nonexempt employees were subject to Defendants' policies of counting hours worked for each Defendant Employer in a given workweek separately for overtime purposes and, at EP, counting hours worked at Special Events separately for overtime purposes from hours worked at productions and events at Venues, Plaintiffs and class members were not paid for all hours worked in excess of 40 hours in a workweek in violation of the overtime provisions of the IMWL. 820 ILCS 105/4a(l).

64. Plaintiffs and members of the IMWL Class were employees of Defendants within the meaning of the IMWL and were entitled to the benefits of the IMWL's overtime wage requirements.

65. Defendants are employers within the meaning of the IMWL.

66. Pursuant to 820 ILCS 105/12(a), Plaintiffs and members of the IMWL Class are entitled to recover punitive damages in the amount of two percent per month of the amount of under payments.

WHEREFORE, Plaintiffs respectfully request:

A. That Defendants be ordered to make whole those persons adversely affected by the policies and practices described herein by providing appropriate back pay, and reimbursement for lost wages in an amount to be shown at trial;

B. That Defendants be ordered to pay punitive damages pursuant to the formula set forth in 820 ILCS 105/12(a);

C. An order designating this action as a class action;

D. An order appointing Plaintiffs and their counsel to represent the IMWL Class;

E. Award counsel for Plaintiffs reasonable attorneys' fees and costs; and

F. Award any further relief which the Court deems appropriate under the circumstances.

Respectfully submitted,

　　/s/　David Huffman-Gottschling
One of Plaintiffs' attorneys

David Huffman-Gottschling
Jacobs, Burns, Orlove and Hernandez
150 N. Michigan Ave., Ste. 1000
Chicago, Illinois 60601
(312) 372-1646